**MAGMA EXTENSION MINING CO.**
**v. KINARD.**
**Civ. A. 3807.**

United States District Court
N. D. Georgia, Atlanta Division.
June 27, 1951.

Edward S. White, Atlanta, Ga., for plaintiff.

Calhoun & Calhoun, Atlanta, Ga., for defendant.

HOOPER, Chief Justice.

This action was brought by Magma Extension Mining Company to enforce the payment of twelve checks, each in the amount of $500, drawn by L. H. Kinard, the defendant, on the Citizens and Southern National Bank, Atlanta, Georgia. The pleadings, stipulations of the parties and other portions of the record disclose the following facts:

On August 22, 1946 Magma Extension Mining Company, plaintiff in this action, entered into a contract under which it leased one hundred twenty (120) mining claims located in Arizona to P. M. Barton. The contract (sometimes referred to below as the "Barton contract") provided for the payment by lessee of royalties on all ore mined on the leased property and, beginning on July 1, 1947, lessee was required to pay a minimum royalty of $500 per month for the property. All royalties were to be paid into an account, designated the Magma Extension Trust account, in the Valley National Bank, Phoenix, Arizona. It was further agreed that Magma Extension Mining Company would sell and convey such mining property to Barton for $350,000, $10,000 of which was paid in cash at the time the contract was executed, and the remainder was to be paid by the royalties provided in the contract to be paid into the Magma Extension Trust account for the benefit of Magma Extension Mining Company. The contract contained, among others, the following paragraph:

"Party of the first part (Magma Extension Mining Company), upon payment of the above mentioned purchase price in full, agrees to and will convey said property to the party of the second part (Barton) by a good and sufficient mining deed, said deed to be forthwith placed in escrow in the Valley National Bank at Phoenix, Arizona, to be delivered to the party of the second part upon the payment of said remainder of said purchase price in full into said Magma Extension Trust Account; and the party of the first part will forthwith furnish and deliver to party of the second part, or his order, such abstract or abstracts of title, or title reports as to said premises as will show good and valid mining title to said premises in party of the first part free and clear of all incumbrances and subject only to the paramount title of the United States of America, under the mining location laws of the said United States of America, and the State of Arizona; provided specially, however, that in the event that party of the first part shall be unable to furnish and deliver merchantable title to any of said mining claims, the total purchase price provided herein shall be reduced in the proportion that the number of claim or claims with defective title bears to the whole number of claims covered by this agreement."

Time was made of the essence of the contract. Subsequently, in March 1948, that contract was assigned to George Lee and by him on May 18, 1948 to New Magma Mines, Inc., an Arizona corporation organized by Kinard, the defendant, George Lee and others for the purpose of taking the assignment of the contract. Kinard raised, through his own contributions and from others, about $70,000 that was used for pre-incorporation and other expenses involved in the organization of that corporation.

Sometime after the assignment of the contract to New Magma Mines, Inc. Kinard,

president and owner of at least one share of the capital stock of New Magma Mines, Inc., as a result of a telephone conversation between him and George Lee, started in June 1948 mailing his personal checks for $500 at approximately monthly intervals to Magma Extension Mining Company, in care of Ralph J. Pomeroy, an officer of plaintiff corporation, to satisfy the minimum monthly rental and royalty payment required by the Barton contract. The checks were held by plaintiff until June 27, 1949 when eleven of them were presented for payment. The twelfth check in question, dated July 1, 1949, was presented for payment on July 13, 1949. All of the checks were dishonored.

In his pleadings and in other parts of the record defendant set up the following defenses:

(1) That the checks were issued after an oral agreement had been made between George Lee, on behalf of defendant, and Ralph J. Pomeroy, an officer of plaintiff corporation, that plaintiff would hold them and not present them for payment until plaintiff had obtained good title to all the mining claims described in the Barton contract and had placed a deed thereto in escrow. Thereafter, according to the defendant's allegations, the checks "would not operate as an obligation of (Kinard) and would not be presented for payment until such a time as (defendant) and other stockholders of New Magma Mines, * * * could make payment in the same amount as said checks * * * and have said checks returned to (defendant)."

(2) That plaintiff did not at the time the Barton contract was executed or at any time thereafter have good title to the mining claims in question.

(3) That no deed to the mining property was ever placed in escrow by the plaintiff as required by the contract.

(4) That no account, designated as the Magma Extension Trust account, was ever created as required by the contract and that, instead, checks were mailed directly to an officer of the plaintiff corporation.

(5) That the transaction did not give rise to any consideration to support the checks.

(6) That the checks were executed as a promise to pay a debt of New Magma Mines, Inc., which was in default at the time they were executed and delivered.

(7) That the checks did not meet the requirments of the Statute of Frauds.

The plaintiff, alleging that there is no dispute as to any fact material to the disposition of this action, made a motion for summary judgment under Rule 56, F.R.C.P., 28 U.S.C.A.

1. The plaintiff denies the existence of the oral agreement set up by the defendant in the first of his defenses listed above and contends, moreover, that defendant cannot vary or contradict the plain, unambiguous terms of the written instrument (checks) by parol evidence of any such agreement. Defendant seeks to prove that under the alleged oral agreement he was not obligated to pay the checks under any condition, that the amounts represented by such checks were to be paid by New Magma Mines, Inc. after it had obtained the money with which to do so and after the plaintiff had obtained good title to all of the mining claims and deposited a deed thereto in escrow. It is clearly implied that if, for any reason, New Magma Mines, Inc. never obtained enough money to pay the checks, there would be no obligation on anyone to pay such amounts.

2. The second of defendant's contentions set out above, that there was an absence or failure of consideration to support the checks for the reason that plaintiff did not at any time have good title to all of the mining claims (except to the extent this defense overlaps a part of the defense discussed in 1, above), is overcome by the express terms of the Barton contract and the stipulations of fact made by the parties at the pre-trial hearing. The contract provides in part that if Magma Extension Mining Company "shall be unable to furnish and deliver merchantable title to any of said mining claims, the total purchase price provided herein shall be reduced in the

proportion that the number of claim or claims with defective title bears to the whole number of claims covered by this agreement." The parties stipulated that the plaintiff at all times involved in this action held good title to at least one hundred eight (108) of the claims, and if the purchase price is reduced in accordance with the formula set out in the Barton contract, it will still far exceed the sum represented by the checks sued on. Moreover, the defendant, according to the stipulations of fact, knew at the time the checks were issued that the title to some of the claims, between five and twelve in number, was defective, and, apart from the provisions of the Barton contract for reducing the purchase price if some of the titles were defective, he will be taken to have waived such defense.

■ 3. Defendant's third defense, that no deed to the property was ever put in escrow by the plaintiff, is involved in the defense discussed in 1, above. Defendant sets it up, however, as a separate defense on the theory that, under the provisions of the Barton contract, the plaintiff was not entitled to the monthly minimum royalty payments until the deed was put in escrow. The parties agree that neither New Magma Mines, Inc. nor any of its predecessors in interest under the contract ever requested that such a deed be placed in escrow, and defendant admits he knew at the time the checks were issued that no deed had ever been placed in escrow. It is stipulated, as mentioned above, that defendant knew plaintiff was able, throughout the period during which the checks were being issued to deliver good title to at least one hundred eight (108) of the claims and, therefore, to meet the requirements of the Barton contract (with the purchase price reduced in accordance with the formula discussed above). Defendant in issuing the checks with knowledge that the deed had not been put in escrow clearly waived this requirement of the contract.

Neither does it appear that failure to put up the escrow deed, under the facts of this case, constituted such a breach of contract by plaintiff as to defeat recovery.

■ 4. Defendant contends that under the Barton contract plaintiff was required to create a separate account, designated as the Magma Extension Trust account, in a specified bank and that since no such account was created and since the checks in question were made payable directly to the Magma Extension Mining Company, the plaintiff has violated an essential requirement of the contract and cannot enforce payment of the checks. The contract does not specify which party was to create the account in question. It is not, however, necessary to interpret the contract on that point. Defendant issued the checks with knowledge that no such account existed and neither made any request that it be set up by the plaintiff nor undertook to set it up himself. It is clear that the defendant, by making the payments required by the contract with full knowledge of the facts, to Magma Extension Mining Company instead of making them to a Magma Extension Trust account, waived any right he may have had to insist on the creation of such an account by the plaintiff. Failure to provide such a trust account would not, under the facts of this case, constitute a material breach of the contract by plaintiff. Had the defendant expressed willingness to pay and requested opening of the account, perhaps it would have been done. Defendant's repudiation of liability, however, relieved plaintiff of its duty to provide means of accepting payment.

■ 5. Defendant takes the position that the transaction as outlined above did not give rise to any consideration to support the checks; that there was no benefit accruing to the defendant or any detriment to the plaintiff. The stipulated facts show that defendant was one of the promoters of the New Magma Mines, Inc., and that at the time the checks were issued he was president and owner of at least one share of stock in that corporation. In addition, he had provided, from his own money and through funds obtained from others, around $70,000.00 which had been used for pre-incorporation and other expenses involved in the organization of New Magma Mines, Inc. That corpora-

tion had been created to take over the assignment of the Barton contract. From these facts it is apparent that defendant had a personal financial interest in keeping the Barton contract, then held by New Magma Mines, alive. If the contract expired or was rescinded by Magma Extension Mining Company for non-payment of the monthly royalties, defendant stood to lose not only the money he had spent in organizing the company and buying the stock he then owned but also his hope or expectation of profit therefrom. The defendant had no right under its terms to rescind the contract, but, on the other hand, if a default occurred the plaintiff could then have taken action to rescind it. It is stipulated that the checks were issued to cover the minimum royalty provided in the Barton contract for the months in which the checks were dated and that the contract remained in effect as long as the checks were issued. No contention is made to the effect that the obligation sued upon (represented by the checks) is to be considered as purchase price rather than as royalty. Under the pleadings that distinction would now appear to be immaterial.

There was consequently a benefit flowing to the defendant, and, since the plaintiff tied its hands as to possession or use or disposition of its own property and also waived its right to proceed for a time against New Magma Mines. Inc. for said rent or possession, there was a detriment to the plaintiff. For these reasons there was a detriment to the plaintiff. For these reasons there was in this transaction ample consideration to support the checks.

6. The defenses listed as (6) and (7), above, both involving the Statute of Frauds, were set up in defendant's amended answer but were abandoned by the defendant in open court at the pre-trial conference.

Amendment Tendered by Defendant

About June 1, 1951 the defendant tendered an amendment to his answer in which he struck out the allegations that the Barton contract had been assigned to Lee and then by Lee to New Magma Mines, Inc. and alleged that no such assignments ever occurred. The amendment also charged the plaintiff with fraud and alleged that the checks were issued as the result of a mistake of fact.

Plaintiff filed a motion to disallow the amendment on the ground that it repudiates the facts constituting the basis of defendant's original answer, repudiates facts formally stipulated by defendant in open court, repudiates sworn statements in defendant's deposition and comes several years after the transaction in question and after the facts involved in this transaction had been fully investigated and explored by the defendant and his attorneys.

The court is disallowing the amendment for many reasons.

In the first place, this action is based on checks, given to cover rentals under a written lease. As in case of negotiable instruments, definite defenses must be urged. Defendant has urged many voluminous defenses, unintelligible to the court, but the court had attempted with patience to allow amendments and continue pre-trial conferences from time to time, in an effort to determine whether defendant has any legal defense, and had found none.

This proferred amendment comes subsequent to these various pre-trial conferences, and is in direct contradiction to defendant's stipulations, as shown by the pre-trial order of record.

■ Attention is called to Paragraph 22 of stipulation (see pre-trial order of May 3, 1951), to the effect that "all facts material to the issues in this case have been stipulated except the facts relating to any agreement that may have been made between Mr. Kinard or someone representing Mr. Kinard, and some representative of the plaintiff." That is to say, plaintiff did not stipulate any such oral agreement was made. If made, it was of no force or effect for the reasons above given. Under the stipulated facts, there is no legal defense. To allow pleadings when admittedly the allegations thereof cannot be supported would be a useless gesture. The amendment is disallowed.

Judgment in accordance herewith will be entered when presented.